

**FILED**
**Jul 02, 2024**
**03:43 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Jo Carol Edwards | ) | Docket No. 2020-07-0656 |
| | ) | |
| v. | ) | State File No. 53020-2020 |
| | ) | |
| Peoplease, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard May 21, 2024 |
| Compensation Claims | ) | via Microsoft Teams |
| Allen Phillips, Judge | ) | |

---

### Affirmed in Part, Reversed in Part, and Certified as Final

---

This is the second appeal in this case. The employee was involved in a motor vehicle accident while operating a truck within the course and scope of her employment. As a result of medical evaluations following the accident, the employee was diagnosed with severe "end stage" tricompartmental osteoarthritis in both knees. The authorized treating physician selected from an employer-provided panel opined that, although the truck accident exacerbated the employee's pre-existing condition, the primary need for total knee replacements was the underlying osteoarthritis, not the work accident. Another physician who evaluated the employee concluded that the truck accident made the employee's previously asymptomatic condition symptomatic, and the resulting symptoms primarily caused the need for total knee replacements. Following an expedited hearing, the trial court ordered the employer to: (1) pay past medical expenses related to the left total knee replacement; (2) authorize the right total knee replacement; (3) authorize the physician the employee had selected to perform her surgery for her medical care moving forward; and (4) pay temporary total disability benefits and mileage expenses. That order was appealed, and we affirmed the trial court's determination that the employee was likely to prevail at trial in proving she suffered a compensable aggravation of her pre-existing condition primarily caused by the truck accident. However, we reversed the trial court's conclusion that the employee was likely to prevail in proving that the truck accident was the primary cause of her need for bilateral total knee replacements. Thereafter, the parties obtained additional proof and submitted additional evidence at a compensation hearing, after which the trial court issued a compensation order: (1) awarding the employee medical expenses related to her left total knee replacement; (2) ordering the employer to authorize all reasonable and necessary future medical benefits, including a right total knee replacement; (3) ordering the employer to authorize the employee's physician to provide future medical treatment; and (4) awarding temporary

1

total disability benefits, permanent total disability benefits, and discretionary costs. The employer has appealed. Upon careful consideration of the record and arguments of counsel, we affirm in part, reverse in part, and certify as final the trial court's order as modified.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Judge Pele I. Godkin joined. Presiding Judge Timothy W. Conner dissented.

Stephen B. Morton, Brentwood, Tennessee, for the employer-appellant, Peoplease, LLC

Charles L. Hicks, Camden, Tennessee, for the employee-appellee, Jo Carol Edwards

## Factual and Procedural Background

Jo Carol Edwards ("Employee") worked as a truck driver through Peoplease, LLC ("Employer"). On August 14, 2020, Employee was involved in a single-vehicle accident when a tire blew, causing her truck to strike a bridge abutment, leave the roadway, and travel down an embankment where it hit some trees before coming to rest in a field. Employee later testified that, as the accident was occurring, both knees repeatedly struck the truck's dashboard. Employee was transported to the nearby University of Mississippi Medical Center where she reported "neck pain, chest pain, bilateral knee pain, [and] sacral pain." Various diagnostic studies were completed at the emergency room, and the nurse practitioner released Employee to follow up with her primary care physician. Once she returned to her home in Tennessee, she received treatment at Fast Pace Urgent Care on August 20 and 24, 2020, regarding a potential diagnosis of Type II Diabetes from the emergency department. In those records, she reported having been in a motor vehicle accident but denied any joint or musculoskeletal pain and was noted by the nurse practitioner to have "normal gait." Meanwhile, Employer accepted the accident as compensable and authorized medical treatment with several providers, including Dr. Jason Hutchison, a board-certified orthopedic surgeon, whom Employee selected from a panel.[1]

Dr. Hutchison saw Employee on September 14, 2020, at which time he diagnosed her with severe bilateral, tricompartmental end stage osteoarthritis in her knees, which pre-existed the work accident. In his report, Dr. Hutchison noted that he advised Employee her injury "is only an aggravation of her underlying arthritis" and that she would need to seek further care "under her private medical [insurance]." In January 2021, Dr. Hutchison explained to Employee that the need for bilateral total knee

---

[1] As we noted in our prior opinion, and as acknowledged by the trial court, Dr. Hutchison's opinion regarding causation is entitled to a rebuttable presumption of correctness in accordance with Tennessee Code Annotated section 50-6-102(12)(E). We previously summarized additional circumstances of the accident and Employee's extensive medical treatment in *Edwards v. Peoplease, LLC*, No. 2020-07-0656, 2022 TN Wrk. Comp. App. Bd. LEXIS 13 (Tenn. Workers' Comp. App. Bd. Mar. 18, 2022).

replacements was not caused by the work accident but arose primarily from her pre-existing, bilateral end stage osteoarthritis. Dr. Hutchison advised Employee that although the work accident "may have caused a significant exacerbation of the arthrosis," that condition "is pre-existing."

Employee returned to Fast Pace Urgent Care Clinic on September 21, 2020, and triage notes indicate Employee stated she was there for lab work, to discuss medications, and that she needed "a referral for orthopedics for [her] bilateral knee replacement." Employee provided a history of joint pain in "the lateral aspect of the left knee, medial aspect of the left knee, lateral aspect of the right knee, and medial aspect of the right knee," describing the pain as "sharp, dull, and aching" and the severity as "moderate." Employee stated she had been "seen with workmans [sic] comp and evaluated, [and] she was told she will need both knees replaced." Employee requested and received a referral to Dr. Timothy Sweo, an orthopedic surgeon in Jackson, Tennessee.

On September 24, 2020, Employee sought care on her own from Dr. Sweo, at which time she described having knee pain for "a few months" with no discussion in the medical note of her work accident. Upon review of Employee's x-rays, Dr. Sweo recommended total knee replacements for both knees at the initial appointment. Dr. Sweo noted Employee had already received conservative treatment, including anti-inflammatories, injections, and pain medication, and determined everything looked "pretty normal" except for arthritis in her knees. When Employee returned to Dr. Sweo two months later, she discussed the truck accident and was "adamant" she had no symptoms in her knees prior to that event.[2] Dr. Sweo obtained an MRI of the left knee in December 2020, which revealed a possible non-displaced fracture and a meniscal tear. With respect to the issue of causation, Dr. Sweo opined that, although Employee's advanced tricompartmental osteoarthritis pre-existed the work accident, her knee condition was asymptomatic prior to the truck accident and she had been able to work as a truck driver without restrictions. He also noted that the work accident caused a posterior tibial plateau fracture that represented an anatomic change in her pre-existing condition. He stressed that the work accident made her bilateral knee conditions symptomatic, which necessitated the total knee replacements. Dr. Sweo performed a left total knee replacement in February 2021 and, in May 2021, recommended she proceed with a right knee replacement.

In preparation for a December 2021 expedited hearing, both Dr. Hutchison and Dr. Sweo were deposed. Dr. Hutchison testified Employee's knee pain, loss of range of motion, and tenderness "could have been related to the accident." However, he explained that none of those symptoms changed the "underlying pathology . . . which is she had

---

[2] She also described her knees breaking the steering column during the accident due to the repeated impact. It was later established that although the axle inside the steering column broke, the steering column itself did not break in the accident.

severely arthritic knees."  He also rejected the notion that Employee had no symptoms prior to the truck accident: "So some of the things that we were discussing in physical exam, [including crepitus] in the knee and, to some degree, range of motion in the knee, some of that had to be abnormal prior to the accident."  He further explained that "whether she appreciated those findings . . . or knew that her knees were popping or knew that she didn't have full range of motion, I wouldn't have known that."

Dr. Hutchison also testified that objective studies verified "bone is touching bone . . . that is end stage disease.  All the cartilage in that area of the knee is completely gone."  He then concluded as follows:

> [H]er primary pathology is end stage tricompartmental arthritis of both knees and . . . that particular finding was not work related or injury related, that she had an exacerbation of symptoms caused by the accident, and . . . that is not, according to my understanding of the law, compensable or something that should be considered for treatment under Workers' Compensation.

With respect to the avulsion fracture identified by Dr. Sweo, Dr. Hutchison described it as a "very small bone spur," which he believed was "fairly inconsequential relative to the big picture."  He disagreed that the avulsion fracture caused instability in the knee, contributed to the need for surgery, or constituted an anatomic change relevant to the treatment Dr. Sweo provided.  He opined that the avulsion fracture did not result in "permanent and documented change of anatomical function of the knees."  Finally, Dr. Hutchison testified that "[t]he arthritis is greater than 51 percent of the cause of the need for a knee replacement."

In his deposition, Dr. Sweo disagreed with the causation opinions expressed by Dr. Hutchison.  Specifically, Dr. Sweo concluded that "the reason she had to have [the surgery] done at that point was because of the accident because she had a fractured bone that didn't heal."  Specifically, he testified that "she took a significant blow to the knee because she broke it" and "when you break part of the knee and it doesn't heal very well . . . it changes the motion in the knee to where places that didn't bother you can bother you after that."  He also concluded that the need for a right total knee replacement was "most likely . . . greater than 51 percent" the result of the truck accident.  On cross-examination, however, Dr. Sweo admitted that the avulsion fracture was an "incidental finding" with respect to the treatment being recommended.  He further explained:

> So, she would have eventually needed a knee replacement because she had very severe arthritis, and the fact that she tells me it doesn't hurt, didn't hurt at all, it's hard to believe.  She probably had pains everywhere and ignored all of them . . . . But the fact that she had to have the knee replacement now I think was because of the injury.

4

Moreover, Dr. Sweo suggested that Employee likely would have already undergone bilateral knee replacements if she had had a more active job prior to the work injury. He further opined that some of her symptoms, including the meniscal tear, swelling, and fluid, were likely due to the pre-existing arthritis and not the work accident.

Following the expedited hearing, the trial court concluded Dr. Hutchison's testimony was flawed due to what it viewed as his misunderstanding as to what constitutes a compensable aggravation under Tennessee's Workers' Compensation Law. The court also concluded that Dr. Sweo's testimony regarding the cause of both knee conditions was more compelling than that of Dr. Hutchison. As a result, the trial court ordered Employer to reimburse costs for Dr. Sweo's left total knee replacement and to authorize the right knee replacement, among other findings. Employer appealed the trial court's interlocutory order.

On appeal, we concluded the evidence presented at the expedited hearing preponderated against the trial court's determinations regarding the primary cause of the need for bilateral total knee replacements. Specifically, we concluded Dr. Sweo had failed to explain how the avulsion fracture had caused "instability" in the knee or how it contributed to the need for the left total knee replacement. Conversely, Dr. Hutchison explained why the avulsion fracture in Employee's left knee was not medically significant and could not cause "instability" in the knee. Finally, we concluded Dr. Sweo had not sufficiently explained how, in comparing the pre-existing end stage tricompartmental arthritis to the work accident, it was the work accident that caused more than fifty percent of the need for bilateral total knee replacements. Given that Dr. Hutchison's causation opinions were entitled to a statutory presumption of correctness, we concluded Dr. Sweo's testimony did not rebut that presumption. As a result, we affirmed in part and reversed in part the trial court's interlocutory order.

Thereafter, both parties retained additional medical experts. In August 2022, Employee was seen at Employer's request by a board-certified orthopedic surgeon, Dr. Claiborne Christian. In September 2022, Employee chose to be evaluated by another orthopedic surgeon, Dr. Lawrence Schrader. In preparation for the compensation hearing, Employer re-deposed Dr. Hutchison and deposed Dr. Christian. Employee deposed Dr. Schrader. The previous depositions of Dr. Hutchison and Dr. Sweo were also admitted into evidence, as were the reports of two vocational experts.

Following trial, the court issued a compensation order in which it determined that Dr. Hutchison's causation opinion was "incorrect" and that Dr. Christian's causation opinion was "flawed." The court emphasized there was no evidence suggesting that Employee had symptoms in her knees before the truck accident. The court then stressed that an aggravation of a pre-existing condition can be compensable if it causes disabling pain. According to the opinions expressed by Dr. Sweo and Dr. Schrader, the need for total knee replacements was more than fifty percent caused by the truck accident

5

irrespective of her pre-existing bilateral end stage arthritis.  The court noted that Dr. Schrader testified to at least two anatomic changes caused by the truck accident: a fracture and a torn meniscus.  The court then noted that, "even without those [anatomic] changes, Dr. Schrader said the accident more likely than not aggravated the arthritis in both knees."  As a result, the court concluded that "Dr. Schrader's opinion both follows Tennessee law and offers the more probable explanation for [Employee's] knee injuries."[3]  Given Employee's "unwavering, honest, and succinct" testimony, the court determined that the work accident "aggravated her knee arthritis by causing disabling pain and the need for bilateral knee replacements."  Based on that finding, the court awarded Employee temporary total disability benefits in the amount of $80,536.49, permanent total disability benefits in the amount of $397,183.58, past medical expenses related to the left total knee replacement, future medical benefits provided by Employee's selected physician, Dr. Sweo, to include a right total knee replacement, and discretionary costs.  Employer has appealed.

**Standard of Review**

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise.  *See* Tenn. Code Ann. § 50-6-239(c)(7) (2023).  When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court.  *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009).  However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018).  Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed de novo with no presumption of correctness afforded the trial court's conclusions.  *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013).  We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer.  Tenn. Code Ann. § 50-6-116 (2023).

---

[3] Employee also sought benefits for alleged injuries to her feet, left shoulder, sternum/ribs, pelvis/sacrum, and cervical spine.  During his deposition, Dr. Schrader causally related each of those conditions primarily to the truck accident and provided a permanent medical impairment rating for each condition. However, the court declined to award any benefits for those injuries, noting Dr. Schrader was the only doctor who testified those alleged injuries arose out of the employment or caused permanent impairment and stating it "did not observe any overt behaviors [of Employee] consistent with problems with these other body parts."  Thus, the trial court implicitly rejected Dr. Schrader's testimony as to each of Employee's alleged work injuries except her knees.  The court's denial of benefits with respect to any alleged injuries other than the knees was not appealed.

**Analysis**

This appeal highlights the often daunting challenge of quantifying causation in circumstances where an employee is alleging a work-related aggravation of a pre-existing condition. As we have noted previously, the 2013 Workers' Compensation Reform Act altered an employee's burden of proof with respect to the issue of medical causation. In *Willis v. All Staff*, No. 2014-05-0005, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *15 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2015), for example, we noted that "[a] key component of the 2013 Workers' Compensation Reform Act is the requirement that the injury for which benefits are sought arise 'primarily' out of and in the course and scope of the employment." We further explained as follows:

> An injury arises primarily out of and in the course and scope of employment "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B) (2014). Further, "[a]n injury causes death, disablement *or the need for medical treatment only* if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement *or need for medical treatment*, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C) (2014). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(13)(D) (2014).

*Id.* at *15-16 (emphases added). To state the obvious, these statutory amendments wrought fundamental changes to how a workers' compensation case is analyzed. Not only must an employee prove by a preponderance of the evidence that the aggravation of a pre-existing condition arose primarily from the work accident, an employee must also prove, as a separate burden, that the work accident was the primary cause of the need for whatever medical treatment has been recommended. In other words, the employee must establish through expert medical evidence that the work accident was more than fifty percent the cause of the need for the treatment being recommended.

*History of Post-Reform Aggravation Cases*

In *Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015), we addressed these statutory changes in the context of an alleged aggravation of a pre-existing hip condition. In *Miller*, the employee was backing up when he tripped over a pallet jack and fell on his left side. *Id.* at *2. During subsequent medical evaluations, a CT scan revealed a severely arthritic left hip. *Id.* at *3. The employee had previously undergone a right hip replacement, and his panel-selected physician recommended a left hip replacement. *Id.*

7

In awarding medical benefits to the injured worker, including a left hip replacement, the trial court concluded that the employee need not show the work accident caused a "permanent anatomic change" in the pre-existing condition to support an order for medical benefits. *Id.* at *6. Thus, the issue on appeal was whether the evidence supported the trial court's finding that the employee was likely to prove at trial the work accident primarily caused the need for the left hip replacement.

In analyzing an employee's burden of proof, we first concluded that "an employee can satisfy the burden of proving a compensable aggravation if: (1) there is expert medical proof that the work accident 'contributed more than fifty percent (50%)' in causing the aggravation, and (2) the work accident was the cause of the aggravation 'more likely than not considering all causes.'" *Id.* at *13 (quoting Tenn. Code Ann. § 50-6-102(13)(C)-(D)). We noted that it was "undisputed" that the employee had no prior symptoms, difficulties, or physical limitations with his left hip prior to the accident. *Id.* We also emphasized the authorized treating physician's testimony that the work accident had "hastened" the need for the hip replacement, and the employee's pain following the work accident was the "primary indication for the surgery." *Id.* at *14. Finally, we noted that there was no evidence in the record to support a finding that the employee's hip condition had "returned to baseline" following the work accident. *Id.* at *15-16.

We ultimately concluded in *Miller* as follows:

> [T]o qualify for medical benefits at an interlocutory hearing, an injured worker who alleges an aggravation of a preexisting condition must offer evidence that the aggravation arose primarily out of and in the course and scope of employment. Moreover, the employee must come forward with sufficient evidence from which the trial court can determine that the employee would likely establish, to a reasonable degree of medical certainty, that the work accident contributed more than fifty percent in causing the aggravation, considering all causes. Finally, an aggravation or exacerbation need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by the aggravation.

*Id.* at *18 (citations omitted). Given that the employer offered no countervailing, admissible evidence rebutting the treating physician's statements that the work accident had hastened the need for the hip replacement surgery and that the symptoms caused by the work accident were the "primary indication" for surgery, we affirmed the trial court's interlocutory award of medical benefits. *Id.* at *19.[4]

---

[4] Importantly, after the expedited hearing and during the pendency of the appeal, the employer in *Miller* attempted to present for our consideration the authorized treating physician's responses to a new questionnaire in which he opined that 75% of the cause of the need for the hip replacement was the pre-existing arthritis. *Id.* at *16-17. We declined to consider that information because those responses to the

There are several significant differences between *Miller* and the present case. First, *Miller* was presented to us at an interlocutory stage of the case, whereas the current appeal was filed following the final compensation hearing, which alters the employee's burden of proof. Second, the authorized treating physician in *Miller* supported the employee's request for benefits, specifically testifying that the work accident "hastened" the need for surgery. Here, however, the authorized treating physician concluded that the primary need for bilateral total knee replacements was the pre-existing arthritis, not the work accident. Hence, unlike in *Miller*, here we must address whether the preponderance of the evidence supports a finding that Dr. Hutchison's causation opinions regarding not only Employee's condition but the need for the recommended medical treatment, which are presumed correct, were rebutted. Third, it was "undisputed" in *Miller* that the employee had no prior symptoms associated with his left hip condition. In the present case, Employee asserts she had no symptoms prior to the work incident; however, both Dr. Hutchison and Dr. Sweo concluded Employee likely had symptoms in her knees that she may or may not have recognized as attributable to her degenerative arthritis. Finally, there was no medical proof in *Miller* suggesting that the need for surgery was primarily caused by the pre-existing condition rather than the work accident. Thus, we conclude that, although instructive, our opinion in *Miller* does not control the outcome of the present case.

We recently decided another case, similar to *Miller*, in which the authorized treating physician recommended treatment for a condition with pre-existing pathology. In *Baker v. ViacomCBS, Inc.*, No. 2022-07-0502, 2023 TN Wrk. Comp. App. Bd. LEXIS 39 (Tenn. Workers' Comp. App. Bd. Aug. 11, 2023), the employee was involved in a forklift accident that she alleged injured her left knee and caused the need for a total knee replacement. *Id.* at *2-3. In response to a questionnaire from the employer's counsel, the treating physician agreed that the employee had pre-existing end stage osteoarthritis and that this condition was not primarily caused by the work accident. However, the physician added that "[t]he patient had a pre[-]existing osteoarthritic knee that had previously not been the source of functionally limiting pain until her work injury." *Id.* at *4. The physician then responded to another questionnaire, stating that the need for a total knee replacement was "hastened" by and "arose primarily" from the work accident. *Id.* Unlike in *Miller*, the employer in *Baker* retained another medical expert who testified that the primary cause of the need for a total knee replacement was the pre-existing arthritic condition, not the work accident. *Id.* at *5. The employer's expert acknowledged, however, that the work accident had "led to the aggravation of some of the symptomology." *Id.* The trial court awarded the requested medical benefits at an expedited hearing, and we affirmed, stating that the presumption of correctness afforded the opinion of the authorized treating physician had not been rebutted. Specifically, we stated, "[w]ithout evidence of dysfunction to the knee prior to the work accident and

questionnaire had not been presented as evidence to the trial court and had not been considered at the expedited hearing. *Id.* at *17-18.

9

medical proof supporting that the dysfunction is the primary cause for the need for surgery, Employer has offered insufficient evidence rebutting [the authorized treating physician's] causation opinion." *Id.* at *14. Again, this case differs, as the authorized treating physician has neither recommended total knee replacements as a result of the work accident nor provided an opinion that the need for total knee replacements was "hastened" by the work accident. In fact, here, the authorized treating physician has conclusively stated that Employee's need for surgery is *not* related to the work incident.

We have also previously considered the compensability of aggravations in several cases following the final compensation hearing. In *Joiner v. United Parcel Service, Inc.*, No. 2017-06-0343, 2018 TN Wrk. Comp. App. Bd. LEXIS 54 (Tenn. Workers' Comp. App. Bd. Sept. 14, 2018), the employee alleged he injured his cervical spine while lifting a mailbag at work. *Id.* at *2. A cervical MRI revealed evidence of degenerative changes at several levels of the cervical spine and a cervical disc herniation at C6-7. *Id.* at *5. Although the authorized physician concluded the employee's left-sided symptoms were most likely caused by the work accident, he also concluded there was an osteophyte at the C5-6 level likely causing the employee's right-sided symptoms and "this [was] not a work-related condition." *Id.* at *6. The employee's medical expert, who testified live at trial, disagreed with the treating physician's causation opinion, concluding instead that the conditions at both levels of the cervical spine "stem[med] from" and were "secondary to" and "related to" the work accident. *Id.* at *12. Following a compensation hearing, the trial court concluded the C5-6 condition was an aggravation of a pre-existing condition and, thus, compensable. *Id.* at *13. On appeal, a majority of this Board disagreed with the trial court, concluding instead that the testimony of the employee's expert was insufficient to establish that the C5-6 condition arose primarily from the work accident and did not overcome the presumption of correctness attributable to the authorized treating physician's causation opinion. The majority explained:

> Proof that a condition is "related to" an event, "stems from" an event, or is "secondary to" an event, while being material and relevant evidence, does not offer a measure of the "contribution" that the employment provided to the injury or to the need for medical treatment, and it does not indicate whether such contribution was "more than fifty percent (50%)."

*Id.* at * 22-23.[5]

---

[5] The dissent emphasized: (1) there was no evidence the employee had suffered any prior injuries to his neck; (2) it was undisputed that the work accident occurred and was accepted as compensable; (3) the employee's testimony regarding his post-accident symptoms in his right hand was unrefuted; and (4) medical records supported the employee's testimony regarding his post-accident symptoms. *Id.* at *27-28 (Conner, J., dissenting). The dissent further concluded that the "totality of the evidence" supported the trial court's determination that the conditions at both levels of the cervical spine arose primarily from the work accident. *Id.* at *30.

On further appeal, the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel reversed the Appeals Board's decision, and the trial court's award was reinstated. *Joiner v. United Parcel Service, Inc.*, No. M2018-01876-SC-R3-WC, 2019 Tenn. LEXIS 522 (Tenn. Workers' Comp. Panel Dec. 6, 2019). The Appeals Panel emphasized that, because the employee's medical expert had testified live, the trial court was in a better position to assess the credibility and strength of that testimony. It further stated, citing the Appeals Board's dissenting opinion, that although the testimony of the employee's medical expert was not a "rigid recitation of the statutory definition" of causation, the testimony still met the required legal standard. *Id.* at *25-26 (internal citation omitted). The Panel concluded that "the evidence does not preponderate against the trial court's determination" as to the medical causation issue. *Id.* at *23.

In *Hannah v. Gaylord Opryland d/b/a Marriott International*, No. 2019-06-2116, 2022 TN Wrk. Comp. App. Bd. LEXIS 25 (Tenn. Workers' Comp. App. Bd. June 14, 2022), the employee alleged he aggravated pre-existing right shoulder and cervical spine conditions after performing repetitive work activities. *Id.* at *2. The panel-selected physician prescribed pain medication and physical therapy, then released him to return to work without restrictions. *Id.* Thereafter, the employer provided another panel of orthopedic specialists after the employee sought treatment on his own. *Id.* at *4-5. The physician selected from that panel opined the employee did not suffer a work-related aggravation of his pre-existing condition, had no permanent medical impairment caused by the work incident, and needed no medical treatment caused primarily by his employment. *Id.* at *5. The employee's physician, meanwhile, testified that the employee had suffered a temporary aggravation of his pre-existing condition that necessitated medical treatment but that the employee suffered no anatomic change as a result of the work accident. *Id.* at *5-6.

Following a compensation hearing, the trial court in *Hannah* concluded the employee had not proven by a preponderance of the evidence that his current condition as of the date of trial or his need for additional medical treatment arose primarily from the alleged work accident, and there was no evidence he had suffered any permanent impairment caused by the alleged incident. *Id.* at *7. It therefore denied the employee's claim for additional benefits. *Id.* On appeal, we affirmed, noting that although the trial court determined the employee had temporarily aggravated his pre-existing condition, he had not proven that he suffered any degree of permanent medical impairment or that the need for any additional medical treatment arose primarily from the alleged work accident. *Id.* at *10-11. Thus, the employee was unsuccessful in rebutting the presumption afforded the panel physicians. *Id.*

Finally, in *Moore v. Beacon Transport, LLC*, No. 2018-06-1503, 2021 TN Wrk. Comp. App. Bd. LEXIS 39 (Tenn. Workers' Comp. App. Bd. Oct. 29, 2021), we discussed the trial court's role in assessing expert medical proof as follows:

[I]t is well established that a trial judge has the discretion to conclude that the opinion of one expert should be accepted over that of another expert. As explained by the Tennessee Supreme Court, "[w]hen faced . . . with conflicting medical testimony . . ., it is within the discretion of the trial judge to conclude that the opinion of certain experts should be accepted over that of other experts and that it contains the more probable explanation." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991) (internal quotation marks omitted). We review such determinations under an abuse-of-discretion standard.

*Id.* at *7 (internal quotation marks and citations omitted).

As reflected in the cases summarized above, there are multiple principles of law that intersect in the present case. First, the causation opinion of a panel-selected treating physician is entitled to a presumption of correctness that can be overcome by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(12)(E). As evidenced by the cases discussed, that presumption is not overcome merely by providing an alternate opinion from another physician. Second, the alleged aggravation of a pre-existing condition can be compensable if the aggravation arose primarily out of and in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(12)(A). However, the employee has the additional burden of proving by a preponderance of the evidence that the work-related accident contributed more than fifty percent (50%) in causing the need for any particular medical treatment, considering all causes. Tenn. Code Ann. § 50-6-102(12)(C). Third, a court can consider several probative factors in determining whether a work-related accident contributed more than fifty percent in causing the need for medical treatment, including but by no means limited to: (1) evidence that employee was asymptomatic prior to the work accident but became symptomatic after the work accident; (2) evidence that the employee had no functional limitations to the injured body part prior to the work accident but had functional limitations after the work accident; and (3) evidence, or a lack of evidence, of an "anatomic change" to the body part or condition in question.

*Application of Law to Facts*

There are numerous issues to address in this case. First, the trial court accepted Employee's testimony that she had "no problems with her knees" prior to the truck accident. Yet, both Dr. Hutchison and Dr. Sweo testified Employee likely had both symptoms and functional limitations in her knees prior to the truck accident.[6] All physicians agreed she suffered from advanced osteoarthritis in both knees before the

---

[6] For example, Dr. Sweo, who testified in support of Employee's claim, stated it was "hard to believe" that her knees "didn't hurt her at all" prior to the truck accident given the advanced arthritic changes. Dr. Hutchison testified that crepitus and range of motion in her knees "had to be abnormal prior to the accident."

accident, but Employee testified she was working full time without restrictions prior to the accident. Moreover, all physicians who testified in this case acknowledged that Employee more likely than not suffered increased symptoms and decreased function in both knees after the truck accident. Thus, we conclude the preponderance of the evidence supports a finding that the truck accident caused an increase in pain and some possible functional limitations. This, in turn, supports the trial court's finding that Employee suffered a compensable aggravation of her pre-existing knee conditions that arose primarily out of the work accident. This does not, however, answer the question of whether Employee met her burden of proving the need for bilateral knee replacements was more than 50% caused by the truck accident.

Second, in reaching its determination regarding the primary cause of the need for bilateral knee replacements, the trial court determined that Dr. Hutchison's causation opinions were fatally flawed because he stated that "an exacerbation of symptoms caused by the accident," is not "compensable or something that should be considered for treatment under Workers' Compensation." We respectfully disagree that Dr. Hutchison's statement regarding whether an "exacerbation of symptoms" is compensable under Tennessee law renders each and every opinion he expressed unreliable.[7] The compensability of an alleged aggravation of a pre-existing condition is a separate issue from whether the need for any particular medical treatment was more than 50% caused by a work accident. Contrary to the trial court's determination regarding Dr. Hutchison's opinions, we conclude Dr. Hutchison consistently and directly stated that, in his opinion, the primary cause of the need for bilateral total knee replacements was the underlying severe osteoarthritis, not the work accident. That opinion was entitled to a presumption of correctness and was confirmed by the testimony of Dr. Christian. The question then becomes whether the trial court abused its discretion in concluding the opinions expressed by Dr. Schrader and Dr. Sweo, when considered in conjunction with Employee's lay testimony and other evidence, overcame the presumption of correctness attributable to Dr. Hutchison's causation opinions. Although the issue is close, we conclude the medical evidence preponderates against the trial court's determinations and, thus, the trial court abused its discretion in accepting the opinions of Dr. Schrader over those of the authorized treating physician, Dr. Hutchison.

Several factors underlie our conclusion that the trial court's order should be reversed with respect to the primary need for total knee replacements. First, the preponderance of the medical evidence presented by both Employer and Employee supports a finding that Employee's degenerative osteoarthritic condition had progressed

---

[7] We conclude Dr. Hutchison's statement is only partially incorrect. Although we have held that an employee who suffers a temporary exacerbation of a pre-existing condition caused by a work-related accident may be entitled to medical benefits, *see, e.g.*, *Miller*, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *18, we have also cited the Supreme Court, stating that a "mere increase in pain" does not, by itself, establish compensability, *see, e.g.*, *Berdnik v. Fairfield Glade Comm. Club*, No. 2016-04-0328, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *8-9 (Tenn. Workers' Comp. App. Bd. May 18, 2017).

to the point that she had some functional limitations in her knees prior to the work accident. Second, all physicians in this case agreed that, in most circumstances, it is *a combination* of underlying advanced osteoarthritis *and* disabling pain that leads to the need for knee replacement surgery. Here, there is no doubt that Employee in the present case had advanced "end stage" osteoarthritis in both knees that pre-existed the work accident. Both Dr. Hutchison and Dr. Christian testified that, without the advanced underlying arthritis, Employee would not have been a candidate for total knee replacements, and Dr. Sweo testified the fracture was "incidental" to the left knee replacement. Third, the preponderance of the medical testimony supports a finding that the only medical treatment for Employee's underlying condition was total knee replacements, regardless of the truck accident. Fourth, though both Dr. Sweo and Dr. Shrader testified Employee's need for total knee replacements was primarily related to the work accident, they gave substantially different reasons for their opinions.

In his first deposition, Dr. Hutchison stressed that Employee's physical examination "could not have been normal prior to the accident." He stated that "her primary pathology is end stage tricompartmental arthritis of both knees" and "that particular finding is not work related or injury related." Dr. Hutchison acknowledged that the truck accident caused an exacerbation of her symptoms, but he concluded it was the underlying arthritic condition, not the work accident, that led to the need for total knee replacements. Finally, Dr. Hutchison testified that the truck accident did not result in any permanent change in the anatomical function of her knees. In his second deposition, Dr. Hutchison reiterated his prior opinions and remained unequivocal in his opinion that her arthritic condition had advanced to the point that a total knee replacement was indicated. He also confirmed that he had not refused to see Employee as a patient. As noted above, his opinions as to causation are entitled to a presumption of correctness.

Dr. Christian, a board-certified orthopedic surgeon for 29 years, agreed with Dr. Hutchison that the primary cause of the need for total knee replacements was the arthritic condition. He noted that, just prior to the truck accident, Employee was "basically bone on bone" and that her condition was "a progressive degenerative process." He concluded that the truck accident caused "nothing more than an exacerbation of symptoms" but did not result in any "significant anatomic change." He also opined that the meniscal tearing noted on diagnostic scans was more likely than not caused by the degenerative arthritis, not the truck accident. Ultimately, he opined that "the cause of the need for the replacement is definitely the end stage arthritis in the joint that was present and not the accident."

As we noted in our opinion from the first appeal, Dr. Sweo testified that an avulsion fracture that apparently occurred in the accident caused "instability" to Employee's right knee, but Dr. Hutchison later testified that Dr. Sweo's opinion regarding instability of the knee was unsupported by Dr. Sweo's own physical

14

examinations, noting that nowhere in Dr. Sweo's medical notes or operative report is "instability of the knee" described. This caused us to conclude that "Dr. Sweo did not explain how, in comparing the pre-existing end-stage tricompartmental arthritis to the work accident, it was the work accident that caused more than fifty percent of the need for bilateral total knee replacements." *Edwards*, 2022 TN Wrk. Comp. App. Bd. LEXIS 13, at *24-25. In addition, Dr. Sweo recommended a total right knee replacement and related the need for that surgery to the work accident despite the fact that an MRI of Employee's right knee had not yet been obtained. When questioned as to his treatment of Employee's right knee, Dr. Sweo testified that he would "probably get an MRI of that [knee] to see if [Employee] has a fracture on that one, too." Dr. Sweo testified that he "assum[ed]" there would be similar results on the MRI and the need for a right total knee replacement is "most likely" the result of Employee's motor vehicle accident, although he also stated that if there was not a fracture in the right knee, Employee "needs the knee replacement either way." We conclude this statement is inconsistent with his testimony that the instability from the fracture in the left knee is what primarily caused the need for the total knee replacements, and as such, his testimony still fails to rebut Dr. Hutchison's opinion regarding the primary cause of the need for surgery. Dr. Sweo was not re-deposed in preparation for the compensation hearing.

Finally, we must address the trial court's reliance on Dr. Schrader's causation opinions. As noted above, Dr. Schrader not only attributed Employee's bilateral knee impairments and the need for total knee replacements to the truck accident, he also concluded Employee had suffered permanent work-related injuries to her feet, neck, left shoulder, sternum/ribs, and pelvis/sacrum and assigned permanent medical impairment ratings attributable to the truck accident for these conditions. Yet, the trial court chose to rely only on Dr. Schrader's causation and impairment opinions relative to the knees and disregarded his opinions as to the other body parts. The trial court did not sufficiently explain why Dr. Schrader's causation and impairment opinions regarding the knees overcame the presumption of correctness attributable to Dr. Hutchison's opinion, but his opinions as to all other body parts identified by Employee as being injured in the truck accident did not merit any weight. Most of Dr. Schrader's testimony regarding these conditions was speculative, as he stated Employee "might" have a rotator cuff tear, and he diagnosed Employee with various conditions of the foot, spine, and sternum despite no abnormal diagnostic testing in the emergency room, no subsequent medical treatment, and limited, if any, medically documented complaints from Employee. Regarding the knees, Dr. Schrader testified he was not sure what other physicians meant when using the term "end stage" to describe Employee's arthritic knee condition, and he was the only physician who related her meniscal tear to the work accident rather than Employee's arthritis. He was also the only physician to testify the accident had "changed the course" of the arthritis and, thus, caused the need for surgery. While Employee testified to no pain before the work accident, which presumably meant that she was not a candidate for surgery at that time, no other physician testified the arthritis itself was advanced by the accident, and Dr. Christian and Dr. Hutchison testified definitively it was not. Moreover,

Dr. Schrader disagreed that Employee had tricompartmental osteoarthritis when all other experts who testified in this case, including Employee's treating surgeon, agreed on that diagnosis and concluded that it pre-existed the work accident. Dr. Schrader's testimony, when reviewed as a whole, was unsupported by the medical evidence and all other testifying physicians.

In sum, although the issue is close, we find the preponderance of the expert medical evidence, when considered in light of the lay testimony and other evidence, preponderates against the trial court's conclusion that Employee had proven the need for bilateral knee replacements was more than fifty percent caused by the work-related accident.[8] Unlike in *Miller* and *Baker*, the opinion that Employee's need for total knee replacements was primarily related to the accident came from doctors other than the panel physician pursuant to Tennessee Code Annotated section 50-6-102(12)(E). Furthermore, in contrast to *Joiner*, Employee presented two expert depositions that gave conflicting reasons as to why the recommended surgeries were primarily related to the work accident. Beyond that, the trial court did not rely entirely on the testimony of Dr. Schrader in its decision, choosing instead to rely on a portion of his testimony regarding the knees only. Thus, we conclude the trial court abused its discretion in determining the causation opinions of Dr. Schrader overcame the presumption of correctness attributable to the causation opinions of Dr. Hutchison.[9]

*Authorized Medical Treatment*

Employer next asserts that the trial court erred in determining Employee was justified in seeking unauthorized medical care and ordering it to reimburse medical expenses incurred by Employee from unauthorized providers. In light of our determinations as noted above, we conclude that Dr. Hutchison, her panel-selected authorized physician, should be authorized to continue providing any reasonable and necessary medical care causally related to the work accident and reverse the portion of the trial court's order awarding payment for past medical treatment relative to the left total knee replacement. We also reverse the portion of the trial court's order awarding Employee a right total knee replacement.

---

[8] The trial court found Employee to be credible, and we give deference in that regard; however, the record contains numerous inconsistencies and conflicting testimony from Employee as to what her initial injuries were, when she told Dr. Sweo about her work accident, and the condition of her left knee following surgery, among other things. Furthermore, the trial court specifically did not credit her testimony regarding injuries other than her knees.

[9] We have similar concerns as our colleague in his dissent regarding the lack of lay testimony indicating Employee's pain or functional limitations existed prior to the accident. However, both Drs. Hutchison and Sweo testified there would have been abnormal range of motion prior to the accident, and Dr. Sweo's testimony indicated that Employee's performance of other jobs could have caused her to need surgery before the accident due to her osteoarthritis.

*Entitlement to Temporary Disability Benefits*

In light of the preceding discussion, we conclude Employee did not come forward with sufficient evidence supporting the award of temporary total disability benefits. If the need for total knee replacements was not shown to be more than fifty percent caused by the truck accident, then Employee's period of temporary disability caused by the left total knee replacement as well as any period of temporary disability attributable to the need for a right total knee replacement are not causally related to the work accident. We therefore reverse that portion of the trial court's order.

*Entitlement to Permanent Total Disability Benefits*

Finally, Employer asserts the trial court erred in awarding Employee permanent total disability benefits.[10] The reports of two vocational experts were offered into evidence: those of Robert Kennon, Ph.D., and Dana M. Stoller, MS, CRC. Dr. Kennon, a licensed psychologist, evaluated Employee at her attorneys' request. Dr Kennon, following a review of medical records and testing of Employee concluded that Employee is now limited to "less than sedentary" work in her current condition; however, this was based not only on the restrictions Dr. Schrader assigned as a result of her bilateral knee conditions, but also restrictions he assigned related to other medical conditions that the trial court determined were not compensable. Thus, Dr. Kennon's opinion that Employee "does not possess reasonable opportunities for employment and should be considered 100% vocationally impaired" is not based solely on work restrictions attributable to the work accident.

Ms. Stoller's report indicates that she reviewed essentially the same materials as Dr. Kennon and conducted her evaluation with Employee telephonically. Ultimately, Ms. Stoller opined that if the opinions of Drs. Hutchison, Sweo, and Christian are controlling, Employee has no vocational disability, but if the opinions of Dr. Schrader are controlling, Employee would have "a significant if not total loss (100%) of access to the open labor market."

Given our conclusions as discussed above, we find Employee did not meet her burden of proving she sustained permanent medical impairment and/or permanent

---

[10] The trial court did not make a specific finding as to the extent of permanent medical impairment resulting from the aggravation of the pre-existing condition. Dr. Hutchison testified there was no permanent impairment primarily related to the work injury. Dr. Schrader testified to impairment ratings for all of the claimed injuries. Although Dr. Schrader apportioned his impairment rating for the knees in light of Employee's pre-existing condition, he provided no testimony as to the degree of permanent impairment for the aggravation of her knee condition assuming the left total knee replacement was not primarily related to the work accident. The impairment he provided for the right knee included a rating for arthritis, which no other providers testified had been caused or advanced by the work accident.

17

vocational disability causally related to the truck accident.  That aspect of the trial court's award is, likewise, reversed.

## Conclusion

For the foregoing reasons, we affirm the trial court's order to the extent Employee established by a preponderance of the evidence she sustained a compensable aggravation of her pre-existing bilateral knee condition and is entitled to future medical benefits if any medical treatment is deemed reasonable, necessary, and causally related to the work accident by her authorized treating physician, Dr. Hutchison.  We reverse the trial court's order awarding reimbursement of past medical expenses related to the left total knee replacement, future medical benefits related to the recommended right total knee replacement, temporary total disability benefits, and permanent total disability benefits. Finally, we certify as final for purposes of further appeal the trial court's order as affirmed in part and reversed in part.  Costs on appeal are taxed evenly to the parties.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Jo Carol Edwards | ) | Docket No. 2020-07-0656 |
| | ) | |
| v. | ) | State File No. 53020-2020 |
| | ) | |
| Peoplease, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard May 21, 2024 |
| Compensation Claims | ) | via Microsoft Teams |
| Allen Phillips, Judge | ) | |

---

**Dissent**

---

Conner, P. J., dissenting

Although I agree with much of the analysis as stated in the majority opinion, there are several factors that lead me to conclude the trial court's order should be affirmed.

First, the trial court accepted as credible Employee's testimony that she had "no problems with her knees" prior to the truck accident. On appeal, we are to afford "considerable deference" to that credibility finding unless the preponderance of the evidence is otherwise. *See, e.g.*, *Delaney v. TPI Corp.*, No. 2016-02-0152, 2019 TN Wrk. Comp. App. Bd. LEXIS 35, at *12 (Tenn. Workers' Comp. App. Bd. Aug. 5, 2019). Although the majority noted substantive inconsistencies in Employee's statements and testimony, it did not conclude the trial court had abused its discretion in accrediting her testimony regarding the lack of knee symptoms prior to the accident. I conclude the evidence does not preponderate against the trial court's determination on this issue.

As noted by the majority, both Dr. Hutchison and Dr. Sweo testified Employee likely had some symptoms in her knees prior to the truck accident, including crepitus and limitations in her range of motion.[1] However, those assumptions are just that -- assumptions. Drs. Sweo and Schrader both testified that some patients who develop severe arthritis do not experience symptoms until late in the process. Even Dr. Hutchison acknowledged that Employee "may have had knees that were end stage arthritis, but no symptoms and doing well, or minimal symptoms." Here, Employee denies having

---

[1] The term "crepitus" refers to "grating, cracking or popping sounds in or around a joint." https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5671376/ (last visited June 28, 2024).

1

symptoms in her knees prior to the work accident. There is no evidence in the record Employee was limited in any way in the performance of her job as a truck driver prior to the accident. There is also no dispute that, after the accident, Employee was unable to return to work as a truck driver. Hence, even if Employee had been experiencing some symptoms in her knees prior to the work accident, there is no evidence those symptoms caused any functional limitations. Thus, I conclude the preponderance of the evidence supports a finding that the truck accident caused new symptoms or an increase in symptoms that led to functional limitations. This, in turn, supports the trial court's finding that Employee suffered a compensable accident that worsened her pre-existing knee condition.

Furthermore, the testifying physicians agreed that patients who have advanced osteoarthritis in their knees but who are not experiencing disabling pain or functional limitations are not necessarily candidates for a total knee replacement. In most circumstances, it is *a combination* of underlying advanced osteoarthritis *and* disabling pain or functional limitations that leads to the need for knee replacement surgery. Thus, although there is no doubt that Employee had advanced "end stage" osteoarthritis in both knees that pre-existed the work accident, she was working full time without restrictions and, by her account, was not experiencing disabling pain or functional limitations until after the truck accident. *See Baker v. ViacomCBS, Inc.*, No. 2022-07-0502, 2023 TN Wrk. Comp. App. Bd. LEXIS 39, *14 (Tenn. Workers' Comp. App. Bd. Aug. 11, 2023) (award of medical benefits affirmed where there was no evidence of dysfunction in the knee prior to the work accident but there was evidence of dysfunction supporting the need for knee replacement surgery after the work accident).

The second factor hinges on the timing of the need for surgery. Several physicians in this case testified that Employee "eventually" would have needed knee replacements regardless of the truck accident. Yet, no physician offered an opinion as to the time frame for that need *absent* the truck accident. Based on the evidence presented in this case, it would be speculative to state when Employee would have needed total knee replacements in the absence of the work accident. In my opinion, based on the totality of the evidence presented in this case, the record supports a finding that the truck accident *hastened* the need for a left total knee replacement.[2]

During his deposition, Dr. Sweo was asked whether he believed the truck accident was more than 51% the cause of the need for knee replacement surgery. He replied, in part, "[T]he fact that she had to have the knee replacement now I think was because of the injury." With respect to the cause of the need for surgery, Dr. Schrader testified that the truck accident "change[d] the course of the disease and required further treatments."

---

[2] There is, to date, insufficient evidence in my opinion that the need for a right total knee replacement is more than fifty percent caused by the work accident. That does not, however, preclude the possibility that such evidence could be obtained in the future supporting the need for such treatment.

He also noted that, after the truck accident, Employee "would be limited to sedentary work," and he testified that her use of a cane for ambulation was "medically necessary." Finally, with respect to the need for knee replacement surgery, Dr. Christian was asked as follows:

> Q. [O]n August 13th, 2020, she would not have required a knee replacement, correct?
>
> A. That's correct.
>
> Q. Okay, but then following the wreck and when she became symptomatic and had contusions, swelling, pain, she then became a candidate for a knee replacement, correct?
>
> A. She did.

Thus, in my opinion, there is sufficient evidence that: (1) the work accident caused new symptoms or increased symptoms that led to functional limitations; and (2) the need for left knee replacement surgery was hastened by the work accident. These factors support a finding that the work accident was the primary cause of the need for knee replacement surgery. *See Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *14 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015).

Finally, I respectfully disagree with the majority's conclusion that the trial court's decision to accept Dr. Schrader's opinion over that of Dr. Hutchison constituted an abuse of discretion. A trial court abuses its discretion when it causes an injustice to the party challenging the decision by: (1) applying an incorrect legal standard; (2) reaching an illogical or unreasonable decision; or (3) basing its decision on a clearly erroneous assessment of the evidence. *See, e.g.*, *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009). Moreover, it is not the role of an appellate court to substitute its judgment for that of the trial court. *Cartwright v. Jackson Capital Partners, Ltd. P'ship*, 478 S.W.3d 596, 614 (Tenn. Ct. App. 2015). Here, I find nothing in the trial court's order to indicate it applied an incorrect legal standard, reached an illogical conclusion, or based its decision on a clearly erroneous assessment of the evidence. Each physician who offered causation testimony had similar expertise and qualifications. Two of the physicians concluded the underlying osteoarthritis was more than 50% the cause of the need for surgery, while two of the physicians opined that the truck accident was the primary need for the surgery. The preponderance of the evidence supports a finding that Employee had increased pain and functional limitations caused by the work accident that hastened the need for surgery. Thus, I cannot conclude the trial court abused its discretion in determining that Dr. Schrader's opinion as to this issue was more convincing and rebutted the presumption of correctness afforded Dr. Hutchison's opinion. For these reasons, I dissent.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Jo Carol Edwards | ) | Docket No.   2020-07-0656 |
| | ) | |
| v. | ) | State File No.  53020-2020 |
| | ) | |
| Peoplease, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard May 21, 2024 |
| Compensation Claims | ) | via Microsoft Teams |
| Allen Phillips, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 2nd day of July, 2024.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Stephen B. Morton | | | | X | stephen.morton@mgclaw.com amber.dennis@mgclaw.com |
| Charles L. Hicks | | | | X | office@hickslawfirm.net assistant@hickslawfirm.net |
| Allen Phillips, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Matthew Keene
Acting Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-532-1564
Electronic Mail: WCAppeals.Clerk@tn.gov